Roland J. Tong (State Bar No. 216836)
*rjt@manningllp.com*
Jessica Rosen (State Bar No. 294923)
  *jwr@manningllp.com*
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
19800 MacArthur Boulevard Suite 900
Irvine, California 92612
Telephone: (949) 440-6690
Facsimile: (949) 474-6991

*Attorneys for Plaintiff*
ENDONOVO THERAPEUTICS, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENDONOVO THERAPEUTICS, INC., a Delaware Corporation, | Case No.: _____ |
| Plaintiff, | **ENDONOVO THERAPEUTICS, INC.'S COMPLAINT FOR PATENT INFRINGEMENT** |
| v. | |
| KVP INTERNATIONAL, INC., a California Corporation, ORTHOCOR MEDICAL, INC., a Delaware Corporation, and CAERUS CORP., a Minnesota Corporation | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Endonovo Therapeutics, Inc. ("Endonovo"), files this Complaint for Patent Infringement against KVP International, Inc., Orthocor Medical, Inc. and Caerus Corp. (collectively "Defendants"), and Demand for Jury Trial. Endonovo hereby complains and alleges as follows:

## INTRODUCTION

1. Endonovo owns several patents based on the innovations of Dr. Arthur A. Pilla involving electromagnetically based medical therapies.

2. Dr. Pilla was a well-known pioneer in the field of electromagnetic therapies. Dr. Pilla's life was focused on research involving the biological effects of electromagnetic fields and the use of such fields in healing various ailments in numerous areas of medicine.

3. Dr. Pilla invented the first FDA-approved bone healing device using Pulsed Electromagnetic Fields (PEMF).  This device was designed to help hard to heal fractures, or nonunions. Dr. Pilla's discoveries led to the creation of an entire industry in Electrotherapeutics.

4. Dr. Pilla obtained several patents on these PEMF technologies he developed. Endonovo currently owns the rights to many of Dr. Pilla's patents, which have been infringed and continue to be infringed by several products that Defendants, and each of the them, have made, used, imported, sold and/or offered for sale.

5. Defendants have made, used, imported, sold and/or offered for sale, their infringing products for use in the same fields which Endonovo's patents intended them to be used, and for the same purposes which the patents are directed.

6. Defendants have also created advertisements and instructions which describe infringing product uses and instruct users to combine components and/or otherwise use products in certain ways which infringe Endonovo's patented method claims.

## NATURE OF THE ACTION

7. This is a patent infringement action, based on the patent laws of the United States, codified at 35 United States Code, sections 271, *et seq*., brought by Endonovo

against Defendants for their infringement, including willful infringement, of four United States Patents owned by Endonovo, the patent numbers and titles of which are:

      a.    U.S. Patent No. 7,740,574, entitled "Electromagnetic Treatment Induction Apparatus and Method for Using Same" ("The '574 Patent");

      b.    U.S. Patent No. 7,758,490, entitled "Integrated Coil Apparatus for Therapeutically Treating Human and Animal Cells, Tissues and Organs with Electromagnetic Fields and Method for Using Same" ("The '490 Patent");

      c.    U.S. Patent No. 8,961,385, entitled "Devices and Method for Treatment of Degenerative Joint Diseases with Electromagnetic Fields" ("The '385 Patent"); and

      d.    Patent 9,656,096, entitled Methods and Apparatus for Electromagnetic Enhancement of Biochemical Signaling Pathways for Therapeutics and Prophylaxis in Plants, Animals and Humans ("The '096 Patent").

8.    A true and correct copy of The '574 Patent is attached to this Complaint as Exhibit A.

9.    A true and correct copy of The '490 Patent is attached to this Complaint as Exhibit B.

10.    A true and correct copy of The '385 Patent is attached to this Complaint as Exhibit C.

11.    A true and correct copy of The '096 Patent is attached to this Complaint as Exhibit D.

## PARTIES

12.    Plaintiff ENDONOVO THERAPEUTICS, INC.  ("Endonovo") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 6320 Canoga Avenue, 15th Floor, Woodland Hills, CA 91367.

13.    Defendant KVP INTERNATIONAL, INC. ("KVP") is a corporation organized under the laws of the State of California, with its principal place of business located at 13775 Ramona Ave., Chino, CA 91710.

14. Defendant ORTHOCOR MEDICAL, INC. ("Orthocor") is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 1251 Red Fox Rd., Arden Hills, MN 55112. Orthocor supplies relevant components and products to KVP.

15. Defendant CAERUS CORP. ("Caerus") is a corporation organized under the laws of the State of Minnesota, with its principal place of business located at 1251 Red Fox Rd., Arden Hills, MN 55112. Caerus owns Orthocor, which it acquired in 2016.

## JURISDICTION AND VENUE

16. This civil action arises out of the United States patent laws codified at 35 United States Code sections 1 *et seq.*, thereby providing this court with subject matter jurisdiction over this action pursuant to 28 United States Code section 1331 and 1338 subdivision (a), where this is a federal question involving patentable subject matter. The federal district courts therefore have original jurisdiction.

17. This court has personal jurisdiction over Defendant KVP, where KVP is a corporation organized under the laws of the State of California, and whose principal place of business is located in California.

18. This court has personal jurisdiction over Defendant Orthocor, as the supplier of critical components and parts to KVP, for use in KVP's own infringing products and product line, for the ultimate sale and offers for sale of those products within California. Orthocor derives substantial profits, revenue and/or income from its sale of these parts and components to KVP for use in KVP's infringing products sold within California.

19. Orthocor also derives substantial profits, revenue and/or income from the sale of its own infringing products and product line within California, including direct sales as well as indirect sales through its own distributors and/or retailers located in California, or that knowingly distribute or sell products to California consumers and/or businesses.

20. This court has personal jurisdiction over Defendant Caerus as the owner of Orthocor as the supplier of critical components and parts to KVP, for use in KVP's own infringing products and product line, for the ultimate sale and offers for sale of those

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

products within California. Caerus, as the owner of Orthocor, also derives substantial profits, revenue and/or income from Orthocor's sale of these parts and components to KVP for use in KVP's infringing products sold within California.

21.   Caerus also derives substantial profits, revenue and/or income from the sale of Orthocor's infringing products as well as its own infringing products and product line within California, including direct sales as well as indirect sales through its own distributors and/or retailers located in California, or that knowingly distribute or sell products to California consumers and/or businesses.

22.   Venue is also proper in this court pursuant to 28 United States Code sections 1391 and 1400 where these Defendants reside, or have committed acts of infringement within this district and have a regular and established place of business.

## FACTUAL BACKGROUND

RELEVANT INNOVATIONS

23.   Dr. Arthur Pilla was an internationally recognized authority on non-invasive electrotherapy devices, who developed many products and patented technologies before his death in 2015.

24.   During his life, Dr. Pilla conducted pioneering research in electromagnetic field (EMF) effects on living tissue and as of his death has already been awarded 16 patents with another 21 patents pending in the area of EMF therapeutics.

25.   Dr. Pilla served as Scientist and Advisor to Ivivi Technologies ("Ivivi"). He patented several technologies during his time at Ivivi, assigning those patent rights to Ivivi.

26.   Ivivi was a subsidiary of another company, ADM Tronics Unlimited, Inc. ("ADM").

27.   Rio Grande Neurosciences, Inc. ("Rio") acquired certain Ivivi assets over the course of several years. By 2015 Rio had acquired all of Ivivi's PEMF technology based patents, which Rio had previously licensed.

28.   Endonovo thereafter acquired these PEMF-based patent rights from Rio on December 22, 2017.

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

29.     Endonovo specifically acquired several patents which Defendants have been infringing and continue to infringe by creating, producing, manufacturing, importing, supplying, distributing, selling, reselling and/or offering to sell various infringing products or components contained therein which infringe alone or in combination.

<div align="center">PATENTS, ASSIGNMENT AND OWNERSHIP</div>

30.     The '574 Patent was granted on June 22, 2010.

31.     All rights, title, and interest in the '574 Patent at the time it was granted, were assigned to Ivivi. Rio later acquired all rights, title and interest to the '574 Patent, which it then sold to Endonovo.

32.     Since December 22, 2017 Endonovo has owned all rights, title and interest in the '574 Patent.

33.     The '490 Patent was granted on July 20, 2010.

34.     All rights, title, and interest in the '490 Patent at the time it was granted, were assigned to Ivivi. Rio later acquired all rights, title and interest to the '490 Patent, which it then sold to Endonovo.

35.     Since December 22, 2017 Endonovo has owned all rights, title and interest in the '490 Patent.

36.     The '385 Patent was granted on February 24, 2015.

37.     All rights, title, and interest in the '385 Patent at the time it was granted, were assigned to Ivivi. Rio later acquired all rights, title and interest to the '385 Patent, which it then sold to Endonovo.

38.     Since December 22, 2017 Endonovo has owned all rights, title and interest in the '385 Patent.

39.     The '096 Patent was granted on May 23, 2017.

40.     All rights, title, and interest in the '096 Patent at the time it was granted, were assigned to Ivivi. Rio later acquired all rights, title and interest to the '096 Patent, which it then sold to Endonovo.

41.     Since December 22, 2017 Endonovo has owned all rights, title and interest in

1  the '096 Patent.

2      42.     The patents in paragraphs [30-42] are collectively referred to as the

3  "Endonovo Patents."

KNOWLEDGE OF THE PATENTS

5      43.     Dr. Pilla was a pioneer in the area of EMF technologies, including PEMF, and

6  incorporating those technologies into healing and therapeutic devices and medical

7  therapies. Anyone practicing in electromagnetic therapy research and product development

8  is aware of Dr. Pilla and his research, since it forms the basis of all such technologies, and

9  whose innovations have been patented in this and many other countries.

10     44.     KVP's own website that has a frequently asked questions (FAQ) section,

11 which states that the "time treatment" approach used in its infringing product line is based

12 on Dr. Pilla's research, and advertises this same product line as patented technology.

13     45.     Orthocor and Caerus must be aware of Dr. Pilla's patents where Orthocor has

14 tried to obtain patents in this same field, but has been significantly limited in the patent

15 protection it has been able to obtain due to Dr. Pilla's own patents in the area. Orthocor has

16 only been able to obtain a limited patent on the addition of a heating element into a PEMF

17 based device. However, Orthocor's products, with or without any such heating element,

18 still directly infringe the Endonovo Patents where they incorporate all parts of the patented

19 PEMF-based apparatus and/or methods in those products or product line.

20     46.     Orthocor also advertises its infringing products and product line as patented

21 PEMF technology, without mentioning the heating element which Orthocor needed to

22 obtain a patent in the first place. The advertisements establish that the therapeutic portion

23 of the device and the portion worth offering for sale is the PEMF technology of the

24 products or product line, irrespective of any heating component and/or element contained

25 within those same products and/or product line. Orthocor and its parent company Caerus,

26 know or certainly should know about the limitations of their own patents and the prior art

27 which requires their patents to be so limited.

28     47.     Defendants thus have knowledge, or should have knowledge of Endonovo's

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

1  Patents, and thus are willfully, knowingly and/or recklessly infringing Endonovo's Patents

2  by and through their ongoing and continued wrongful activities.

3  <center>INFRINGING PRODUCTS AND TECHNOLOGIES</center>

4    48. Defendants make, market, import, use, sell, and/or offer for sale several

5  products and related services within the United States, including this district, which

6  infringe Endonovo's Patents.

7    49. KVP makes, markets, uses, sells and offers for sale a product it refers to as its

8  KVP Cura line, including, but not limited to the KVP Cura Patch. KVP has trademarked

9  the KVP Cura name it uses to refer to its infringing products and/or product line, a picture

10  of KVP's infringing product line and advertisement for the same is shown below.





<center>7</center>

50.     The KVP Cura line infringes, where according to KVP's own website, "the KVP Cura line reduces pain and increases blood flow, providing effective therapy for a variety of ailments. Using PEMF technology, KVP Cura increases metabolism, blood flow, and lymphatic flow by accelerating the exchange of positive and negative ions through the cell membranes of an animal's body." Thus, the product line includes PEMF technology used for treating various ailments in exactly the same way as intended by the Endonovo Patents.

51.     The KVP Cura line includes a "KVP Cura Patch which attaches with Velcro for use with a wide variety of garments" according to KVP's own website, where the Patch itself contains the PEMF technology. The Patch itself infringes certain claims of the Endonovo Patents, and can also be combined with a variety of therapeutic devices, where the combination infringes Endonovo's patents. By instructing and/or encouraging a consumer and/or other user to combine or otherwise use a product in a particular way, KVP also indirectly infringes upon method claims within Endonovo's Patents.

52.     Endonovo is informed and believes, and on that basis alleges, that KVP sought a trademark on its Cura name in October of 2017, and thus on or around this same time it also began marketing, making, using, selling and offering for sale the relevant infringing products and product line.

53.     Orthocor supplies KVP with components for use in the KVP Cura products and product line, including components with the PEMF technology built within, which either infringe the Endonovo Patents themselves, or infringe when used in combination with other components contained within the KVP Cura product line, where Orthocor encourages and/or instructs KVP to combine the components to create the infringing products and/or product line.

54.     Orthocor has also developed its own line of PEMF products, which infringe the Endonovo Patents. Orthocor refers to this line of products as "The OrthoCor Active System." Orthocor sells and markets this "system" as a PEMF therapy used for pain relief targeting at least seven locations or "pain sites" on the body including the ankle, back,

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

knee, wrist, elbow, shoulder, and neck. "The OrthoCor Active System" for the back and knee are shown below.



55.    "The OrthoCor Active System," according to Orthocor's own website, is based on PEMF therapy which Orthocor also claims to have patented. However, Orthocor was only able to obtain a small subset of patents which all require the addition of a heating element into a PEMF device, and where such addition still does not save its products or product line from infringing upon the Endonovo Patents where all of the elements of the claims in these patents are otherwise met, regardless of whether the heating element is also included or not.

56.    Despite knowing that its patents definitely require the additional heating component, at the very least, Orthocor does not mention this heating element as part of its "Active System" on its website, but instead claims the system is based on patented PEMF therapy. But the PEMF therapy is what is essentially patented by the Endonovo Patents.

57.    Orthocor has marketed, made, used, sold and offered for sale various

infringing products contained within this "Active System" product line for several years. It is believed that Orthocor may have taken advantage of Dr. Pilla's deteriorating health and Rio's slow and drawn out acquisition of Ivivi's PEMF Patents as well as its later sale of these assets to Endonovo.

58.     Once Endonovo had acquired these patent rights, it sought to determine the extent to which Orthocor had knowingly infringed upon those patents.

59.     Caerus acquired Orthocor in 2016. It continued to make, use, sell and/or offer for sale the infringing products of the "OrthoCor Active System." It also makes, uses, sells and/or offers for sale its own infringing products and product line, which it refers to as the "EMbrace Relief System," the "EMpower Device," and the "EMbrace L'il Back System." The "EMpower Device" is shown below.



60.     The "EMbrace Relief System" refers to a device which can be for therapy on the Hip, Back and/or Shoulder area of a dog or similar animal. The "EMbrace Relief System" is shown below.



61.     The "EMbrace L'il Back System" refers to the "EMpower Device" coupled with a back bracer for use on a dog or similar animal. The "EMbrace L'il Back System" is shown below.



62.    Defendants, and each of them, have been and are now infringing, and will continue to infringe, the Endonovo Patents in this judicial district as well as elsewhere in California and in the United States, by, among other things, making, manufacturing, using, importing, selling, marketing, and/or offering for sale these products, or variations thereon (collectively referred to herein as the "Accused Products.")

63.    In addition to directly infringing the Endonovo Patents under 35 United States Code section 271, subdivision (a), either literally or under the doctrine of equivalents, or both, Defendants indirectly infringe all Endonovo Patents either literally or under the doctrine of equivalents, or both, by instructing, directing, and/or requiring others, including customers, purchasers, users, and developers, to perform all or some of the steps of the method claims of the Endonovo Patents.

64.    Moreover, Endonovo alleges that Defendants all had knowledge of the Endonovo Patents and willfully infringed upon these patents, taking advantage of the failing health of Dr. Pilla followed by a lengthy transition in the ownership of Dr. Pilla's PEMF patents which provided these Defendants with substantial time to make, market and/or sell these infringing products and technologies, thus deriving a significant amount of profits, revenue and/or income from the sale of these infringing products.

## INFRINGEMENT CLAIMS

### COUNT I

### (Direct Infringement of the '574 Patent pursuant to 35 U.S.C. §271(a).)

65.    Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

66.    Defendants, and each of them, have infringed and continue to infringe one or more of the claims of the '574 patent, by making, using, selling and/or offering for sale within the United States, or otherwise importing into the United States, the infringing products, and/or infringing components of those products, in violation of 35 United States Code, section 271, subdivision (a).

67.    Defendants' infringement of the '574 Patent is based on literal infringement or

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

1  infringement under the doctrine of equivalents, or both.

2      68.     Defendants' acts of making, using, selling and/or offering for sale or

3  otherwise importing the infringing products and/or related services, have been done

4  without license, and without the permission, consent, or authorization of Endonovo.

5      69.     Defendants' infringement includes, but is not limited to, the manufacture, use,

6  importation, sale, and offer for sale of products contained in the "KVP Cura" line,

7  including but not limited to the "KVP Cura Patch," as well as any KVP braces and

8  therapeutic devices made for the "KVP Cura Patch" or with a place such that the 'KVP

9  Cura Patch" will attach, the "OrthoCor Active System," including all devices which make

10 up this "Active System" line of products, including those which attach on or around, and

11 target therapy to the ankle, knee, back, neck, elbow, wrist, and/or shoulder, the "EMbrace

12 Relief System," including each part of that system for use on the Hip, Back, and/or

13 Shoulder, the "EMpower Device," which can be used in combination with other

14 therapeutic devices to target various areas of the body, and the "EMbrace L'il Back

15 System," which incorporates the PEMF device into the therapeutic back brace to create a

16 new infringing product. These products are collectively referred to as the "'574 Infringing

17 Products."

18     70.     The '574 Infringing Products infringe the '574 Patent because each of these

19 products either practices and/or utilizes a method for using an electromagnetic treatment

20 inductive apparatus, where that method comprises the steps of (1) combining at least one

21 inductive apparatus with a therapeutic device, wherein said therapeutic device is positioned

22 in proximity to a target pathway structure, (2) configuring at least one waveform according

23 to a mathematical model having at least one waveform parameter, said at least one

24 waveform to be coupled to said target pathway structure, (3) choosing a value of said

25 least one waveform parameter to satisfy a signal to noise ratio model, so that said at least

26 waveform is configured to be detectable in said target pathway structure above background

27 activity in said target pathway structure, (4) generating an electromagnetic signal from said

28 configured at least one waveform, (5) and coupling said electromagnetic signal to said

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

target pathway structure using said at least one inductive apparatus device thereby providing treatment.

71.     Each of the '574 Infringing Products uses and/or incorporates this method, where each one combines an inductive apparatus either built into some kind of therapeutic device, or that is provided on a patch or other component which can then be attached or secured to such a device, while positioned or "coupled" near the location requiring therapy, referred to as the "target pathway structure," and where the inductive device thereby generates an EM signal based on at least one waveform with at least one parameter satisfying signal to noise ratios such that the location to be healed will detect such a waveform in order to have any healing and/or therapeutic effect on that area (which explains how the necessary PEMF technology in these products must work to be effective in the first place).

72.     Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their infringement of the '574 Patent.

73.     Endonovo has been harmed and sustained damages as a direct and proximate result of Defendants' infringement of the '574 Patent. Endonovo is thus entitled to monetary compensation for Defendants' infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendants through their infringement of the '574 Patent.

74.     Endonovo is informed and believes, and on that basis alleges, that the infringement of the '574 Patent by Defendants, and each of them, is and has been intentional, willful and without regard to Endonovo's rights. Defendants, and each of them, are aware of Dr. Pilla and his pioneering EMF research and the patents he obtained while conducting that research, which Endonovo now owns.

75.     Despite Defendants' knowledge of the Endonovo Patents, Defendants, and each of them, have sold and continue to sell the '574 Infringing Products and related

services in complete and reckless disregard of Endonovo's patent rights. As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '574 Patent, justifying an award for increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United States Code, section 285.

76.    As a result of Defendants' unlawful activities, Endonovo has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Endonovo competes with Defendants in these areas of developing medical device technologies and/or therapies. Endonovo currently licenses use of the '574 Patent and is engaged in the licensing of its patent portfolio generally. Defendants' continued infringement of the '574 Patent causes, and will continue to cause, harm to Endonovo in various ways, including but not limited to, price erosion, loss of goodwill, damage to reputation, lost business opportunities, lost revenue and income from the sale of its own products, and increased direct and/or indirect competition.

77.    Monetary compensation alone for the damages incurred due to the harm caused by Defendants' infringing activities is, and will continue to be, insufficient to compensate Endonovo for these harms. Endonovo is therefore entitled to preliminary and/or permanent injunctive relief. Unless enjoined, Defendants will continue their infringing activities and conduct. Thus, injunctive relief is necessary to protect Endonovo from ongoing injury and further damages.

<div align="center">COUNT II</div>

<div align="center">**(Indirect Infringement of the '574 Patent pursuant to 35 U.S.C. §271(b).)**</div>

78.    Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

79.    Defendants, and each of them, have induced and continue to induce infringement of one or more of the claims of the '574 Patent, in violation of 35 United States Code, section 271, subdivision (b).

80.    In addition to their direct infringement, Defendants have indirectly infringed,

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

and will continue to indirectly infringe the '574 Patent by supplying components and otherwise instructing, directing and/or requiring others, including each of the other Defendants, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to perform some or part of the steps of the '574 Patent's method claims, whether literally or under the doctrine of equivalents, where all such steps of the method claims are performed either by the Defendants or its suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users, or some combination thereof.

81. Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, knew or were willfully blind to the fact that they each were inducing others, including each other, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to infringe by practicing either themselves or in conjunction with Defendants, one or more of the method claims of the '574 Patent.

82. Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, knowingly and actively aided and abetted the direct infringement of the '574 Patent by instructing, directing, encouraging, and/or requiring others, including each of the other Defendants, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to use the '574 Infringing Products. Such instruction and/or encouragement included, but was not limited to, advising third parties to use the '574 Infringing Products in an infringing manner, and distributing various guidelines and procedures to third parties explaining or instructing those parties on how to use the '574 Infringing Products in an infringing manner, providing mechanisms through which third parties could or may infringe the '574 Patent, as well as by advertising and promoting the use of the '574 Infringing Products in an infringing manner.

83. Examples of wrongful instruction, encouragement, advertisement, and distribution of guidelines can be seen on Defendants' websites, advertisements for the '574 Infringing Products, as well as Defendants' own FAQ sheets, brochures, User Guides and

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

Instruction Sheets for the '574 Infringing Products, which, among other things, instructs, and/or encourages combining the PEMF inductive devices to a brace or other therapeutic device and/or item which is thereafter placed by the instructions near the location of the injured area requiring the therapy.

84.     Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their indirect infringing activities involving the '574 Patent.

85.     Endonovo has been harmed and sustained damages as a direct and proximate result of Defendants' infringement of the '574 Patent. Endonovo is thus entitled to monetary compensation for Defendants' infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendants through their indirect infringing activities involving the '574 Patent.

86.     Where Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of indirect infringement of the '574 Patent, an award for increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United States Code, section 285, is justified.

87.     Where such indirect infringement also threatens to damage Endonovo in ways that cannot be adequately compensated by monetary compensation alone, Endonovo also requests and is entitled to preliminary and/or permanent injunctive relief from Defendants' ongoing infringing activities.

## COUNT III

### (Direct Infringement of the '490 Patent pursuant to 35 U.S.C. §271(a).)

88.     Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

89.     Defendants, and each of them, have infringed and continue to infringe one or more of the claims of the '490 patent, by making, using, selling and/or offering for sale within the United States, or otherwise importing into the United States, the infringing

1  products, and/or infringing components of those products, in violation of 35 United States

2  Code, section 271, subdivision (a).

3      90.    Defendants' infringement of the '490 Patent is based on literal infringement or

4  infringement under the doctrine of equivalents, or both.

5      91.    Defendants' acts of making, using, selling and/or offering for sale or

6  otherwise importing the infringing products and/or related services, have been done

7  without license, and without the permission, consent, or authorization of Endonovo.

8      92.    Defendants' infringement includes, but is not limited to, the manufacture, use,

9  importation, sale, and offer for sale of products contained in the "KVP Cura" line,

10 including but not limited to all therapeutic braces and other devices which are used in

11 combination with the "KVP Cura Patch," or any KVP braces and therapeutic devices for

12 which the PEMF technology is directly build into said brace or device, the "OrthoCor

13 Active System," including all devices which make up this "Active System" line of

14 products, including those which attach on or around, and target therapy to the ankle, knee,

15 back, neck, elbow, wrist, and/or shoulder, the "EMbrace Relief System," including each

16 part of that system for use on the Hip, Back, and/or Shoulder, as long as each is combined

17 with the "EMpower Device," or that same device when used in combination with any of

18 Caerus' braces or other form fitting therapeutic devices or garments, including the

19 "EMbrace L'il Back System," which incorporates the PEMF device into the therapeutic

20 back brace. These products are collectively referred to as the "'490 Infringing Products."

21     93.    The '490 Infringing Products infringe the '490 Patent because each one is an

22 electromagnetic treatment apparatus for animals and humans comprising (1) a waveform

23 configuration means for configuring at least one waveform to be coupled to a target

24 pathway structure according to a mathematical model having at least one waveform

25 parameter capable of being chosen to satisfy a Signal to Noise Ratio model so that said at

26 least one waveform is configured to be detectable in said target structure above background

27 activity in said target pathway structure, (2) at least one coupling device connected to said

28 waveform configuration means by at least one connecting means for generating an

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

electromagnetic signal from said configured at least one waveform and for coupling said electromagnetic signal to said target pathway structure, and (3) a positioning device wherein said at least one coupling device is integral to said positioning device.

94.     Each of the '490 Infringing Products involves an electromagnetic treatment apparatus for an animal or human in which PEMF therapy is used, and thereby comprises a waveform configuration means in which at least one parameter is chosen and configured to satisfy signal to noise ratio such that the signal will be detectable by the "target structure" and which will be coupled to the target pathway structure, that is, the area of the body to be healed or requiring therapy, and where these products also comprise a connecting means to couple the generated signal of the configured waveform to the target area requiring therapy, where the connecting means is the brace and/or a patch which attaches directly to the brace, and where the brace then connects directly to the body to encompass the area to be healed which provides the positioning means integral to the coupling of the signal generated and the targeted area.

95.     The '490 Infringing Products also infringe the '490 Patent because each of these products either practices and/or utilizes a method for electromagnetic therapeutic treatment of animals and humans comprising the steps of (1) configuring at least one waveform according to a mathematical model having at least one waveform parameter, said at least one waveform to be coupled to a target pathway structure, (2) choosing a value of said at least one waveform parameter to satisfy a Signal to Noise Ratio model so that said at least waveform is configured to be detectable in said target pathway structure above background activity in said target pathway structure, (3) generating an electromagnetic signal from said configured at least one waveform, (4) integrating at least one coupling device with a positioning device to be placed in proximity to said target pathway structure, and (5) coupling said electromagnetic signal to said target pathway structure using said at least one coupling device.

96.     Each of the '490 Infringing Products uses and/or incorporates this method which ultimately is the PEMF signal configuring and generating methods employed by all

of the infringing devices, and doing so in such a way where the signal generated is then coupled (placed in close proximity to) the target pathway structure (the part of the body to be healed) by means of this integration of a coupling device with a positioning device, where the positioning device would be some type of device which positions in and/or around the area at issue, such as a form fitting brace and/or garment and where the coupling device would be the attachable unit or patch or the means or device by which the inductive unit is thereby attached to the brace and/or garment, regardless of how that unit or patch is attached thereto.

97.     Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their infringement of the '490 Patent.

98.     Endonovo has been harmed and sustained damages as a direct and proximate result of Defendants' infringement of the '490 Patent. Endonovo is thus entitled to monetary compensation for Defendants' infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendants through their infringement of the '490 Patent.

99.     Endonovo is informed and believes, and on that basis alleges, that the infringement of the '490 Patent by Defendants, and each of them, is and has been intentional, willful and without regard to Endonovo's rights. Defendants, and each of them, are aware of Dr. Pilla and his pioneering EMF research and the patents he obtained while conducting that research, which Endonovo now owns.

100.   Despite Defendants' knowledge of the Endonovo Patents, Defendants, and each of them, have sold and continue to sell the '490 Infringing Products and related services in complete and reckless disregard of Endonovo's patent rights. As such, Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of infringement of the '490 Patent, justifying an award for increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys'

1  fees and costs pursuant to 35 United States Code, section 285.

2  101.   As a result of Defendants' unlawful activities, Endonovo has suffered and will

3  continue to suffer irreparable harm for which there is no adequate remedy at law.

4  Endonovo competes with Defendants in these areas of developing medical device

5  technologies and/or therapies. Endonovo currently licenses use of the '490 Patent and is

6  engaged in the licensing of its patent portfolio generally. Defendants' continued

7  infringement of the '490 Patent causes, and will continue to cause, harm to Endonovo in

8  various ways, including but not limited to, price erosion, loss of goodwill, damage to

9  reputation, lost business opportunities, lost revenue and income from the sale of its own

10  products, and increased direct and/or indirect competition.

11  102.   Monetary compensation alone for the damages incurred due to the harm

12  caused by Defendants' infringing activities is, and will continue to be, insufficient to

13  compensate Endonovo for these harms. Endonovo is therefore entitled to preliminary

14  and/or permanent injunctive relief. Unless enjoined, Defendants will continue their

15  infringing activities and conduct. Thus, injunctive relief is necessary to protect Endonovo

16  from ongoing injury and further damages.

17                                          COUNT IV

18        **(Indirect Infringement of the '490 Patent pursuant to 35 U.S.C. §271(b).)**

19  103.   Endonovo repeats, realleges, and incorporates by reference, as if fully set forth

20  herein, the allegations of all preceding paragraphs, as set forth above.

21  104.   Defendants, and each of them, have induced and continue to induce

22  infringement of one or more of the claims of the '490 Patent, in violation of 35 United

23  States Code, section 271, subdivision (b).

24  105.   In addition to their direct infringement, Defendants have indirectly infringed,

25  and will continue to indirectly infringe the '490 Patent by supplying components and

26  otherwise instructing, directing and/or requiring others, including each of the other

27  Defendants, as well as other suppliers, resellers, developers, distributors, customers,

28  purchasers, consumers and/or other users to perform some or part of the steps of the '490

Patent's method claims, whether literally or under the doctrine of equivalents, where all such steps of the method claims are performed either by the Defendants or its suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users, or some combination thereof.

106.    Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, knew or were willfully blind to the fact that they each were inducing others, including each other, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to infringe by practicing either themselves or in conjunction with Defendants, one or more of the method claims of the '490 Patent.

107.    Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, knowingly and actively aided and abetted the direct infringement of the '490 Patent by instructing, directing, encouraging, and/or requiring others, including each of the other Defendants, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to use the '490 Infringing Products. Such instruction and/or encouragement included, but was not limited to, advising third parties to use the '490 Infringing Products in an infringing manner, and distributing various guidelines and procedures to third parties explaining or instructing those parties on how to use the '490 Infringing Products in an infringing manner, providing mechanisms through which third parties could or may infringe the '490 Patent, as well as by advertising and promoting the use of the '490 Infringing Products in an infringing manner.

108.    Examples of wrongful instruction, encouragement, advertisement, and distribution of guidelines can be seen on Defendants' websites, advertisements for the '490 Infringing Products, as well as Defendants' own FAQ sheets, brochures, User Guides and Instruction Sheets for the '490 Infringing Products, which, among other things, instructs, and/or encourages combining the PEMF inductive devices to a brace or other therapeutic device and/or item which is thereafter placed by the instructions near the location of the injured area requiring the therapy.

109.   Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their indirect infringing activities involving the '490 Patent.

110.   Endonovo has been harmed and sustained damages as a direct and proximate result of Defendants' infringement of the '490 Patent. Endonovo is thus entitled to monetary compensation for Defendants' infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendants through their indirect infringing activities involving the '490 Patent.

111.   Where Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of indirect infringement of the '490 Patent, an award for increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United States Code, section 285, is justified.

112.   Where such indirect infringement also threatens to damage Endonovo in ways that cannot be adequately compensated by monetary compensation alone, Endonovo also requests and is entitled to preliminary and/or permanent injunctive relief from Defendants' ongoing infringing activities.

## COUNT V

### (Direct Infringement of the '385 Patent pursuant to 35 U.S.C. §271(a).)

113.   Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

114.   Defendants, and each of them, have infringed and continue to infringe one or more of the claims of the '385 patent, by making, using, selling and/or offering for sale within the United States, or otherwise importing into the United States, the infringing products, and/or infringing components of those products, in violation of 35 United States Code, section 271, subdivision (a).

115.   Defendants' infringement of the '385 Patent is based on literal infringement or infringement under the doctrine of equivalents, or both.

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

116.   Defendants' acts of making, using, selling and/or offering for sale or otherwise importing the infringing products and/or related services, have been done without license, and without the permission, consent, or authorization of Endonovo.

117.   Defendants' infringement includes, but is not limited to, the manufacture, use, importation, sale, and offer for sale of products contained in the "KVP Cura" line, including but not limited to the "KVP Cura Patch," as well as any KVP braces and therapeutic devices made for the "KVP Cura Patch" or with a place such that the 'KVP Cura Patch" will attach, the "OrthoCor Active System," including all devices which make up this "Active System" line of products, including those which attach on or around, and target therapy to the ankle, knee, back, neck, elbow, wrist, and/or shoulder, the "EMbrace Relief System," including each part of that system for use on the Hip, Back, and/or Shoulder, the "EMpower Device," which can be used in combination with other therapeutic devices to target various areas of the body, and the "EMbrace L'il Back System," which incorporates the PEMF device into the therapeutic back brace to create a new infringing product. These products are collectively referred to as the "'385 Infringing Products."

118.   The '385 Infringing Products infringe the '385 Patent because each employs, practices or utilizes a method of treating degenerative joint disease comprising (1) positioning a flexible coil wire applicator of a lightweight wearable or stationary pulsed EMF therapy device adjacent to a joint or tissue to be treated, and (2) applying a treatment regime from the therapy device, wherein the treatment regime comprises bursts of electromagnetic signals having a peak amplitude of less than about 200 milliGauss, wherein the bursts have a duration of between about 0.5 msec and about 50 msec, further wherein the bursts are repeated at an interburst interval of between about 2 seconds and 0.1 second for a treatment on-time. followed by a treatment off-time that is greater than the treatment on-time, **_or instead_** comprising (1) positioning a flexible coil wire applicator of a lightweight, wearable battery-operated EMF therapy device adjacent to a joint or tissue to be treated, and (2) treating the joint or tissue by applying bursts of electromagnetic waves

having a peak amplitude of less than about 200 milliGauss from the therapy device, wherein the bursts have a duration of between about 0.5 msec and about 50msec. further wherein the bursts are repeated at an interburst interval of between about 10 seconds and 0.1 second for a treatment on-time of between about 5minutes and 30 minutes. followed by a treatment off-time that is greater than about 30 minutes, *or instead* comprising (1) applying a coil applicator of a lightweight wearable or stationary pulsed EMF therapy device adjacent to a joint or tissue to be treated and (2) applying a treatment regime from the therapy device wherein the treatment regime comprises bursts of electromagnetic waves having a peak amplitude of less than about 200 milliGauss, wherein the bursts have a duration of between about 0.5msec and about 50 msec. further wherein the bursts are repeated at an interburst interval of between about 2 seconds and 0.1 second for a treatment on-time, followed by a treatment off-time that is greater than the treatment on-time.

119.   Each of the '385 Infringing Products uses and/or incorporates one of these methods within those products by positioning a flexible coil wire applicator or a coil applicator that is either lightweight, or contained within a lightweight and wearable device, sometimes battery operated, and then by employing a timed system of EMF pulses through the device positioned adjacent to the joint or tissue to be treated, in which bursts of EM waveforms are applied as part of a treatment regime based on these timed intervals which Dr. Pilla's research determined had optimal healing and therapeutic effects for treatment of degenerative joint diseases and to provide the requisite pain relief caused by such diseases. KVP admits to utilizing the timed approach based on Dr. Pilla's research. Endonovo is informed and believes, and on that basis alleges, that KVP obtains the requisite PEMF component parts from Orthocor who already was using the same technology in its own infringing products, and where those parts were also later incorporated into Caerus' own product line.

120.   Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their

1    infringement of the '385 Patent.

2         121.   Endonovo has been harmed and sustained damages as a direct and proximate

3    result of Defendants' infringement of the '385 Patent. Endonovo is thus entitled to

4    monetary compensation for Defendants' infringement in an amount to be determined to

5    compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by

6    Defendants through their infringement of the '385 Patent.

7         122.   Endonovo is informed and believes, and on that basis alleges, that the

8    infringement of the '385 Patent by Defendants, and each of them, is and has been

9    intentional, willful and without regard to Endonovo's rights. Defendants, and each of them,

10   are aware of Dr. Pilla and his pioneering EMF research and the patents he obtained while

11   conducting that research, which Endonovo now owns.

12        123.   Despite Defendants' knowledge of the Endonovo Patents, Defendants, and

13   each of them, have sold and continue to sell the '385 Infringing Products and related

14   services in complete and reckless disregard of Endonovo's patent rights. As such,

15   Defendants have acted recklessly and continue to willfully, wantonly, and deliberately

16   engage in acts of infringement of the '385 Patent, justifying an award for increased

17   monetary damages pursuant to 35 United States Code, section 284, as well as attorneys'

18   fees and costs pursuant to 35 United States Code, section 285.

19        124.   As a result of Defendants' unlawful activities, Endonovo has suffered and will

20   continue to suffer irreparable harm for which there is no adequate remedy at law.

21   Endonovo competes with Defendants in these areas of developing medical device

22   technologies and/or therapies. Endonovo currently licenses use of the '385 Patent and is

23   engaged in the licensing of its patent portfolio generally. Defendants' continued

24   infringement of the '385 Patent causes, and will continue to cause, harm to Endonovo in

25   various ways, including but not limited to, price erosion, loss of goodwill, damage to

26   reputation, lost business opportunities, lost revenue and income from the sale of its own

27   products, and increased direct and/or indirect competition.

28        125.   Monetary compensation alone for the damages incurred due to the harm

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

caused by Defendants' infringing activities is, and will continue to be, insufficient to compensate Endonovo for these harms. Endonovo is therefore entitled to preliminary and/or permanent injunctive relief. Unless enjoined, Defendants will continue their infringing activities and conduct. Thus, injunctive relief is necessary to protect Endonovo from ongoing injury and further damages.

## COUNT VI

**(Indirect Infringement of the '385 Patent pursuant to 35 U.S.C. §271(b).)**

126.   Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

127.   Defendants, and each of them, have induced and continue to induce infringement of one or more of the claims of the '385 Patent, in violation of 35 United States Code, section 271, subdivision (b).

128.   In addition to their direct infringement, Defendants have indirectly infringed, and will continue to indirectly infringe the '385 Patent by supplying components and otherwise instructing, directing and/or requiring others, including each of the other Defendants, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to perform some or part of the steps of the '385 Patent's method claims, whether literally or under the doctrine of equivalents, where all such steps of the method claims are performed either by the Defendants or its suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users, or some combination thereof.

129.   Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, knew or were willfully blind to the fact that they each were inducing others, including each other, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to infringe by practicing either themselves or in conjunction with Defendants, one or more of the method claims of the '385 Patent.

130.   Endonovo is informed and believes, and on that basis alleges, that Defendants,

and each of them, knowingly and actively aided and abetted the direct infringement of the '385 Patent by instructing, directing, encouraging, and/or requiring others, including each of the other Defendants, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to use the '385 Infringing Products. Such instruction and/or encouragement included, but was not limited to, advising third parties to use the '385 Infringing Products in an infringing manner, and distributing various guidelines and procedures to third parties explaining or instructing those parties on how to use the '385 Infringing Products in an infringing manner, providing mechanisms through which third parties could or may infringe the '385 Patent, as well as by advertising and promoting the use of the '490 Infringing Products in an infringing manner.

131.    Examples of wrongful instruction, encouragement, advertisement, and distribution of guidelines can be seen on Defendants' websites, advertisements for the '385 Infringing Products, as well as Defendants' own FAQ sheets, brochures, User Guides and Instruction Sheets for the '385 Infringing Products, which, among other things, instructs, and/or encourages combining the PEMF inductive devices to a brace or other therapeutic device and/or item which is thereafter placed by the instructions near the location of the injured area requiring the therapy and began the specified treatment to the location.

132.    Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their indirect infringing activities involving the '385 Patent.

133.    Endonovo has been harmed and sustained damages as a direct and proximate result of Defendants' infringement of the '385 Patent. Endonovo is thus entitled to monetary compensation for Defendants' infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendants through their indirect infringing activities involving the '385 Patent.

134.    Where Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of indirect infringement of the '385 Patent, an award for

increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United States Code, section 285, is justified.

135.   Where such indirect infringement also threatens to damage Endonovo in ways that cannot be adequately compensated by monetary compensation alone, Endonovo also requests and is entitled to preliminary and/or permanent injunctive relief from Defendants' ongoing infringing activities.

COUNT VII

**(Direct Infringement of the '096 Patent pursuant to 35 U.S.C. §271(a).)**

136.   Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

137.   Defendants, and each of them, have infringed and continue to infringe one or more of the claims of the '096 patent, by making, using, selling and/or offering for sale within the United States, or otherwise importing into the United States, the infringing products, and/or infringing components of those products, in violation of 35 United States Code, section 271, subdivision (a).

138.   Defendants' infringement of the '096 Patent is based on literal infringement or infringement under the doctrine of equivalents, or both.

139.   Defendants' acts of making, using, selling and/or offering for sale or otherwise importing the infringing products and/or related services, have been done without license, and without the permission, consent, or authorization of Endonovo.

140.   Defendants' infringement includes, but is not limited to, the manufacture, use, importation, sale, and offer for sale of products contained in the "KVP Cura" line, including but not limited to the "KVP Cura Patch," as well as any KVP braces and therapeutic devices made for the "KVP Cura Patch" or with a place such that the 'KVP Cura Patch" will attach, the "OrthoCor Active System," including all devices which make up this "Active System" line of products, including those which attach on or around, and target therapy to the ankle, knee, back, neck, elbow, wrist, and/or shoulder, the "EMbrace Relief System," including each part of that system for use on the Hip, Back, and/or

Shoulder, the "EMpower Device," which can be used in combination with other therapeutic devices to target various areas of the body, and the "EMbrace L'il Back System," which incorporates the PEMF device into the therapeutic back brace to create a new infringing product. These products are collectively referred to as the "'096 Infringing Products."

141.    The '096 Infringing Products infringe the '096 Patent because each one is a device for accelerating cytosolic ion binding to a corresponding cytosolic buffer to modulate a biochemical signaling pathway employed for tissue growth, repair and maintenance, the device configured to increase a voltage across a target ion binding pathway according to an asymmetrical binding kinetics of the target pathway, wherein the target ion binding pathway has an ion bound time, the device comprising: a flexible and circular lightweight wire coil applicator; and a signal generator configured to apply an electromagnetic signal to the applicator to induce, in the target pathway, a peak electric field between 1 to 100 V/m, wherein a signal generated by the signal generator has a pulse duration, random signal duration or carrier period which is less than twice the ion bound time, applied in a burst of waveforms having a pulse duration of between 1 μs and 100 μs, further wherein the signal generated has a burst duration between 1 to 10 msec of between 5 MHz to 50 MHz carrier waves, repeating between 1 and 10 bursts/sec.

142.    Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their infringement of the '096 Patent.

143.    Endonovo has been harmed and sustained damages as a direct and proximate result of Defendants' infringement of the '096 Patent. Endonovo is thus entitled to monetary compensation for Defendants' infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendants through their infringement of the '096 Patent.

144.    Endonovo is informed and believes, and on that basis alleges, that the

1  infringement of the '096 Patent by Defendants, and each of them, is and has been

2  intentional, willful and without regard to Endonovo's rights. Defendants, and each of them,

3  are aware of Dr. Pilla and his pioneering EMF research and the patents he obtained while

4  conducting that research, which Endonovo now owns.

5    145.  Despite Defendants' knowledge of the Endonovo Patents, Defendants, and

6  each of them, have sold and continue to sell the '096 Infringing Products and related

7  services in complete and reckless disregard of Endonovo's patent rights. As such,

8  Defendants have acted recklessly and continue to willfully, wantonly, and deliberately

9  engage in acts of infringement of the '096 Patent, justifying an award for increased

10  monetary damages pursuant to 35 United States Code, section 284, as well as attorneys'

11  fees and costs pursuant to 35 United States Code, section 285.

12    146.  As a result of Defendants' unlawful activities, Endonovo has suffered and will

13  continue to suffer irreparable harm for which there is no adequate remedy at law.

14  Endonovo competes with Defendants in these areas of developing medical device

15  technologies and/or therapies. Endonovo currently licenses use of the '096 Patent and is

16  engaged in the licensing of its patent portfolio generally. Defendants' continued

17  infringement of the '096 Patent causes, and will continue to cause, harm to Endonovo in

18  various ways, including but not limited to, price erosion, loss of goodwill, damage to

19  reputation, lost business opportunities, lost revenue and income from the sale of its own

20  products, and increased direct and/or indirect competition.

21    147.  Monetary compensation alone for the damages incurred due to the harm

22  caused by Defendants' infringing activities is, and will continue to be, insufficient to

23  compensate Endonovo for these harms. Endonovo is therefore entitled to preliminary

24  and/or permanent injunctive relief. Unless enjoined, Defendants will continue their

25  infringing activities and conduct. Thus, injunctive relief is necessary to protect Endonovo

26  from ongoing injury and further damages.

27                              COUNT VIII

28  **(Indirect Infringement of the '096 Patent pursuant to 35 U.S.C. §271(b).)**

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

148.   Endonovo repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of all preceding paragraphs, as set forth above.

149.   Defendants, and each of them, have induced and continue to induce infringement of one or more of the claims of the '096 Patent, in violation of 35 United States Code, section 271, subdivision (b).

150.   Endonovo is informed and believes, and on that basis alleges, that Defendants knowingly and actively aided and abetted the direct infringement of the '096 Patent by instructing, directing, encouraging, and/or requiring others as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to use the '096 Infringing Products. Such instruction and/or encouragement included, but was not limited to, advising third parties to use the '096 Infringing Products in an infringing manner, and distributing various guidelines and procedures to third parties explaining or instructing those parties on how to use the '096 Infringing Products in an infringing manner, providing mechanisms through which third parties could or may infringe the '096 Patent, as well as by advertising and promoting the use of the '096 Infringing Products in an infringing manner.

151.   Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, knew or were willfully blind to the fact that they each were inducing others, including each other, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to infringe by practicing either themselves or in conjunction with Defendants, one or more of the method claims of the '096 Patent.

152.   Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, knowingly and actively aided and abetted the direct infringement of the '096 Patent by instructing, directing, encouraging, and/or requiring others, including each of the other Defendants, as well as other suppliers, resellers, developers, distributors, customers, purchasers, consumers and/or other users to use the '096 Infringing Products. Such instruction and/or encouragement included, but was not limited to, advising third

parties to use the '096 Infringing Products in an infringing manner, and distributing various guidelines and procedures to third parties explaining or instructing those parties on how to use the '096 Infringing Products in an infringing manner, providing mechanisms through which third parties could or may infringe the '096 Patent, as well as by advertising and promoting the use of the '096 Infringing Products in an infringing manner.

153.   Examples of wrongful instruction, encouragement, advertisement, and distribution of guidelines can be seen on Defendants' websites, advertisements for the '096 Infringing Products, as well as Defendants' own FAQ sheets, brochures, User Guides and Instruction Sheets for the '096 Infringing Products, which, among other things, instructs, and/or encourages combining the PEMF inductive devices to a brace or other therapeutic device and/or item which is thereafter placed by the instructions near the location of the injured area requiring the therapy.

154.   Endonovo is informed and believes, and on that basis alleges, that Defendants, and each of them, have gained substantial profits and revenue, and subjected Endonovo to lost profits and revenue through loss of sales of its own products by virtue of their indirect infringing activities involving the '096 Patent.

155.   Endonovo has been harmed and sustained damages as a direct and proximate result of Defendants' infringement of the '096 Patent. Endonovo is thus entitled to monetary compensation for Defendants' infringement in an amount to be determined to compensate for Endonovo's lost sales and profits and/or the profits and revenue gained by Defendants through their indirect infringing activities involving the '096 Patent.

156.   Where Defendants have acted recklessly and continue to willfully, wantonly, and deliberately engage in acts of indirect infringement of the '096 Patent, an award for increased monetary damages pursuant to 35 United States Code, section 284, as well as attorneys' fees and costs pursuant to 35 United States Code, section 285, is justified.

157.   Where such indirect infringement also threatens to damage Endonovo in ways that cannot be adequately compensated by monetary compensation alone, Endonovo also requests and is entitled to preliminary and/or permanent injunctive relief from Defendants'

1    ongoing infringing activities.

2    **PRAYER FOR RELIEF**

3    WHEREFORE, Endonovo prays for the following relief:

4    158.   A judgment that Defendants, and each of them, have directly and/or indirectly

5    infringed one or more of the claims of the '574 Patent;

6    159.   A judgment that Defendants, and each of them, have directly and/or indirectly

7    infringed one or more of the claims of the '490 Patent;

8    160.   A judgment that Defendants, and each of them, have directly and/or indirectly

9    infringed one or more of the claims of the '385 Patent;

10   161.   A judgment that Defendants, and each of them, have directly and/or indirectly

11   infringed one or more of the claims of the '096 Patent;

12   162.   An order and judgment either preliminarily or permanently enjoining

13   Defendants, and each of them, as well as Defendants' officers, agents, affiliates,

14   employees, and/or any other persons acting or attempting to act in concert or participation

15   with Defendants, from any further acts of infringement of the '574 Patent;

16   163.   An order and judgment either preliminarily or permanently enjoining

17   Defendants, and each of them, as well as Defendants' officers, agents, affiliates,

18   employees, and/or any other persons acting or attempting to act in concert or participation

19   with Defendants, from any further acts of infringement of the '490 Patent;

20   164.   An order and judgment either preliminarily or permanently enjoining

21   Defendants, and each of them, as well as Defendants' officers, agents, affiliates,

22   employees, and/or any other persons acting or attempting to act in concert or participation

23   with Defendants, from any further acts of infringement of the '385 Patent;

24   165.   An order and judgment either preliminarily or permanently enjoining

25   Defendants, and each of them, as well as Defendants' officers, agents, affiliates,

26   employees, and/or any other persons acting or attempting to act in concert or participation

27   with Defendants, from any further acts of infringement of the '096 Patent;

28   166.   A judgment awarding Endonovo monetary damages adequate to compensate

MANNING&KASS
ELLROD, RAMIREZ, TRESTER LLP
ATTORNEYS AT LAW

Endonovo for Defendants' infringement of the '574 Patent, including any and all pre-judgment and post-judgment interest at the maximum rate permitted by law;

167.   A judgment awarding Endonovo monetary damages adequate to compensate Endonovo for Defendants' infringement of the '490 Patent, including any and all pre-judgment and post-judgment interest at the maximum rate permitted by law;

168.   A judgment awarding Endonovo monetary damages adequate to compensate Endonovo for Defendants' infringement of the '385 Patent, including any and all pre-judgment and post-judgment interest at the maximum rate permitted by law;

169.   A judgment awarding Endonovo monetary damages adequate to compensate Endonovo for Defendants' infringement of the '096 Patent, including any and all pre-judgment and post-judgment interest at the maximum rate permitted by law;

170.   A judgment that Defendants, and each of them, have willfully, wantonly and/or deliberately infringed the '574 Patent;

171.   A judgment that Defendants, and each of them, have willfully, wantonly and/or deliberately infringed the '490 Patent;

172.   A judgment that Defendants, and each of them, have willfully, wantonly and/or deliberately infringed the '385 Patent;

173.   A judgment that Defendants, and each of them, have willfully, wantonly and/or deliberately infringed the '096 Patent;

174.   A judgment awarding Endonovo increased damages pursuant to 35 United States Code section 284 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '574 Patent;

175.   A judgment awarding Endonovo increased damages pursuant to 35 United States Code section 284 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '490 Patent;

176.   A judgment awarding Endonovo increased damages pursuant to 35 United States Code section 284 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '385 Patent;

177.   A judgment awarding Endonovo increased damages pursuant to 35 United States Code section 284 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '096 Patent;

178.   A judgment awarding Endonovo its reasonable attorneys' fees as provided for in 35 United States Code section 285 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '574 Patent;

179.   A judgment awarding Endonovo its reasonable attorneys' fees as provided for in 35 United States Code section 285 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '490 Patent;

180.   A judgment awarding Endonovo its reasonable attorneys' fees as provided for in 35 United States Code section 285 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '385 Patent;

181.   A judgment awarding Endonovo its reasonable attorneys' fees as provided for in 35 United States Code section 285 to the extent that the Court finds this case exceptional with respect to Defendants' infringement of the '096 Patent;

182.   Any such further relief that this Court determines is proper and just.


Respectfully Submitted,


DATED:  February 7, 2019          By:      */s/ Roland J. Tong*

Roland J. Tong (State Bar No. 216836)
**MANNING & KASS**
**ELLROD, RAMIREZ, TRESTER LLP**
19800 MacArthur Boulevard Suite 900
Irvine, California 92612
Telephone: (949) 440-6690
Facsimile: (949) 474-6991
rjt@manningllp.com

*Attorneys for Plaintiff*
ENDONOVO THERAPEUTICS, INC.